DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:    Frank Balsamello
       Assistant United States Attorney
       26 Federal Plaza, 38th Floor
       New York, New York 10278
       Telephone: (212) 637-2325

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| -v.- : | **VERIFIED COMPLAINT FOR FORFEITURE** |
| $463,243.41 IN UNITED STATES CURRENCY, : | 24 Civ. 7990 |
| Defendant-*in-rem*. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff United States of America, by its attorney Damian Williams, United States Attorney for the Southern District of New York, for its verified complaint, alleges, upon information and belief, as follows:

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to Title 18, United States Code, Section 981 by the United States of America seeking the forfeiture of $463,243.41 in United States currency (the "Defendant Funds" or the "Defendant-*in-rem*").

2. This Court has jurisdiction pursuant to Title 28, United States Code, Section 1355.

3. Venue is proper under Title 28, United States Code, Section 1355(b)(1)(A) because certain actions and omissions giving rise to forfeiture took place in the Southern District of New York and pursuant to Title 28, United States Code, Section 1395 because the Defendant Funds have been transferred to the Southern District of New York.

4. The Defendant Funds constitute proceeds of violations of mail fraud, Title 18, United States Code, Section 1341, wire fraud, Title 18, United States Code, Section 1343 and conspiracy to commit mail and wire fraud, Title 18, United States Code, Section 1349 and are thus subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C).

## II.   BACKGROUND

5. CBM SAS, headquartered in France, is a global supplier of aftermarket automotive and bus parts including brakes, brake pads, brake shoes, anti-lock braking sensors, ignition coils, water pumps, suspension parts, wheel hubs, and thermostats. CBM SAS, doing business through wholly owned subsidiaries including CBM NA (in Canada) and CBM US (in the United States) (together, "CBM" or the "Company"), has customers around the world, including in the United States. These customers include several city metropolitan transit authorities ("MTAs").

6. Between in or about 2014 and in or about 2021, MTAs generally placed orders for parts directly with CBM US, or issued public requests for bids to which CBM US responded.

7. When MTAs purchased such bus parts, they had the option of contracting for one or more of the following categories of part:

   a. OEM Parts: parts made and distributed by an original equipment manufacturer ("OEM")—*i.e.*, the original manufacturing production line for the parts;

   b. Brand-Name Parts: parts distributed under a particular brand name, using the same production line as the OEM, but not necessarily sold under that manufacturer's name; or

   c. Generic or Alternate Parts: parts that are similar—and may in fact be equivalent in form, fit, and function—to an OEM's or brand-name distributor's parts, but are not from the OEM or brand-name distributor.

8. Generally, OEM and brand-name parts are more expensive than generic parts. MTAs often expressly contracted for OEM or brand-name parts, and they included part specifications such as brand and model numbers in their contracts or requests for bids. MTAs also have established approval processes for suppliers who wish to replace an OEM or brand-name part with an alternate part.

9. Since 2010, CBM (through CBM NA and then CBM US) steadily increased its US-based market share. Part of what has made CBM successful in the European and US markets is CBM's ability to "source" and "develop" bus parts. *Developing* is identifying another manufacturer that has replicated, or is capable of replicating, a brand-name distributor's part, which CBM was able to offer to customers at a lower cost. Developed parts are considered generic or alternate parts in the industry. *Sourcing* is identifying an upstream supplier or original manufacturer (*i.e.*, an OEM) of a brand name part, which CBM was able to acquire and sell at a lower cost than the same part obtained from the brand-name distributor.

**The "Developed Parts Scheme"**

10. Between at least in or about 2015 and in or about 2021, in approximately 1.07 percent of CBM US's sales, CBM US bid on and won contracts to provide OEM and brand-name parts to MTAs but then falsely misled, and at times fraudulently deceived, those MTAs by in fact providing developed parts. CBM US engaged in at least one such fraudulent or misleading transaction with approximately 18 MTAs, and such transactions resulted in net profits to CBM US of approximately $175,543.81 from in or about 2015 through in or about April 2021.

11. The Developed Parts Scheme was known to, directed, and carried out by two individuals at the highest levels of CBM management acting on behalf of CBM US, both of whom are French citizens residing in France. These two individuals maintained control of CBM US's sales, submitting the bids and directing the supply for the transactions at issue, while

3

concealing significant details from other CBM management and ownership. A few additional lower-level employees also were aware of the scheme and at one of these individual's direction provided some assistance in executing it.

**The "Sourced Parts Practices"**

12. Additionally, between at least in or about 2011 and in or about 2021, in approximately 2.35 percent of CBM US's sales, CBM US bid on and won contracts to provide brand-name parts to MTAs and then provided what CBM understood to be sourced parts. Although CBM personnel—through their research, communications with OEMs, and other industry knowledge—often believed that sourced parts were the same as requested parts, CBM also knew that sourced parts were procured from upstream manufacturers or distributors, rather than from the specific brand-name companies listed in MTA contracts and in CBM US's bids. CBM US engaged in at least one such transaction with approximately 14 MTAs, and such transactions resulted in net profits to CBM US of approximately $287,699.60 from in or about 2011 through in or about April 2021.

13. Because CBM's Sourced Parts Practices were predicated on CBM employees' beliefs that the company was providing the same parts as the ones specified in its MTA contracts (even if they were obtained from a different source) and provided those parts at lower cost to the customer, these practices were not kept secret and were more widely known among CBM employees than were the details of the Developed Parts Scheme. CBM employees across seniority levels and CBM entities participated in identifying sources for parts, as well as in conducting CBM US's transactions involving sourced parts.

14. CBM's Developed Parts Scheme and Sourced Parts Practices both gave CBM US certain competitive advantages in bidding for and fulfilling MTA contracts. In some instances, CBM was able to outbid competitors and increase profits while charging customers

less for developed and sourced parts. CBM US was also at times able to contract to provide parts that were not otherwise readily available on the market.

### III. THE DEFENDANT-*IN-REM*

15. On or about July 8, 2024, CBM entered into a Non-Prosecution Agreement (the "NPA") with the United States with respect to its conduct relating to the fraudulent schemes described above. Under the NPA, CBM agreed to forfeit $463,243.41 in United States currency to the Government representing the proceeds of the fraud scheme described above. Pursuant to the NPA, CBM transferred the Defendant Funds to the United States in the Southern District of New York as a substitute *res* for the proceeds of the scheme. CBM agreed that the Defendant Funds are subject to civil forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C).

16. The NPA and the accompanying Statement of Facts are attached hereto as Exhibit 1.

### IV. CLAIM FOR FORFEITURE

17. Incorporated herein are the allegations contained in paragraphs one through seventeen of this Verified Complaint.

18. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specific unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

19. "Specified unlawful activity" is defined in Title 18, United States Code, Section 1956(c)(7), and includes, among other things, any offense listed under Title 18, United States Code, Section 1961(1). Section 1961(1) lists, among other things, mail fraud (Section 1341) and wire fraud (Section 1343).

20. By reason of the foregoing, the Defendant Funds are subject to forfeiture to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), because the Defendant Funds constitute proceeds of mail fraud, wire fraud and conspiracy to commit mail and wire fraud.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant-*in-rem* and that all persons having an interest in the Defendant-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant-*in-rem* to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
  October 21, 2024

          DAMIAN WILLIAMS
          United States Attorney for the
          Southern District of New York
          Attorney for the Plaintiff
          United States of America


By:  *[signature: Frank J. Balsamello]*
      FRANK BALSAMELLO
      Assistant United States Attorney
      26 Federal Plaza, 38th Floor
      New York, New York 10278
      Telephone: (212) 637-2325

## VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

DANIEL M. HELZNER, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Transportation, and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information on the ground of his belief are official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials, during an investigation of alleged violations of Titles 18 and 31, United States Code.

*[signature]*
Daniel M. Helzner
Special Agent
United States Department of Transportation